UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

MICHAEL WALKER,                         )   No. EDCV 08-971 DSF (FFM)
                                        )
            Plaintiff,                  )   MEMORANDUM DECISION AND
                                        )   ORDER
      v.                                )
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )
_____ )

     Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration denying his application for Supplemental Security Income ("SSI") benefits.  On August 15, 2008 and August 20, 2008, plaintiff and defendant, respectively, consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  Pursuant to the case management order entered on August 4, 2008 and the January 9, 2009, February 12, 2009, and May 26, 2009 orders granting extensions of time, on July 7, 2009, the parties filed a Joint Stipulation detailing each party's arguments and authorities.  The Court has reviewed the administrative record (the "AR"), filed by defendant on April 6, 2009, and the Joint Stipulation (the "JS").  For the reasons stated below, the decision of the Commissioner is affirmed.

/ / /

/ / /

## PROCEDURAL HISTORY

On October 21, 2003, plaintiff filed an application for a period of disability and disability insurance benefits. (AR 83-84.) Plaintiff filed an application for SSI benefits on that same date. (*See* AR 13.) Plaintiff's applications were denied initially and upon reconsideration.[1] (AR 548-51, 555-58.) On March 10, 2004, plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 559.) On February 4, 2005, ALJ Peter Baum held a hearing. (AR 575-601.) Plaintiff appeared with counsel and testified at the hearing. (*See id.*) On June 14, 2005, ALJ Baum issued a decision denying benefits. (AR 30-36.)

On August 1, 2005, plaintiff sought review of the decision before the Social Security Administration Appeals Council. (AR 65.) On November 4, 2005, the Appeals Council granted plaintiff's request for review, vacated the June 14, 2005 decision, and remanded the case for further proceedings. (AR 67-68.)

On September 7, 2006, ALJ John W. Belcher held a second hearing in the action. (AR 602-36.) Plaintiff again appeared with counsel and testified. (*See id.*)

On October 10, 2006, the ALJ issued a decision denying benefits. (AR 13-18.) On November 28, 2006, plaintiff sought review of the decision before the Social Security Administration Appeals Council. (AR 9.) The Appeals Council denied plaintiff's request for review on May 22, 2008. (AR 6-8.)

Plaintiff filed his complaint herein on July 25, 2008.

---

[1] Plaintiff's application for a period of disability and disability insurance benefits was denied on the ground that plaintiff had not worked long enough to qualify for benefits. (AR 37-38.) At the first hearing in his case, plaintiff's counsel acknowledged that plaintiff had abandoned his claim for disability insurance benefits. (AR 580.)

**CONTENTIONS**

Plaintiff raises five issues in this action:

1.    Whether the ALJ complied with the Appeals Council's remand order to obtain additional evidence from plaintiff's treating psychiatrist;

2.    Whether the ALJ complied with the remand order to give further consideration to the treating source opinion;

3.    Whether the ALJ properly considered plaintiff's obesity;

4.    Whether the ALJ properly considered the lay witness testimony; and

5.    Whether the ALJ properly developed the record.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). However, even if substantial evidence exists in the record to support the Commissioner's decision, the decision must be reversed if the proper legal standard was not applied. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014-15 (9th Cir. 2003).

/ / /

**DISCUSSION**

1.    <u>Obtaining additional evidence</u>.

In the November 4, 2005 remand order, the Appeals Council wrote:

> Michael F. Johanek, M.D., [plaintiff's] treating psychiatrist,
> has indicated that [plaintiff] is disabled.  The hearing
> decision . . . indicates that this opinion is not supported by
> Dr. Johanek's brief progress notes.  The decision also noted
> that the issue of whether [plaintiff] is disabled is reserved to
> the Commissioner.  While the issue of whether [plaintiff] is
> disabled is reserved to the Commissioner, recontact with Dr.
> Johanek is necessary for additional evidence and to ascertain
> the basis for his opinion (Social Security Ruling 96-5p).

(AR 67.)  The Council then ordered the ALJ, upon remand, to obtain additional evidence from Dr. Johanek "in order to complete the administrative record in accordance with the regulatory standards . . . ."  (AR 68.)

The Council noted that the additional evidence should include a clarification for the basis of the disability opinion.  (*Id.*)  Such clarification, ordered the Council, should include a medical source statement of what plaintiff could do despite the impairments and mental status findings supporting the opinions about what plaintiff could still do.  The Council further noted that the additional evidence could include, "if warranted and available," a consultative psychiatric or consultative examination. (*Id.*)

As plaintiff asserts, the record indicates that the ALJ submitted a form entitled "Request for DDS Assistance in Obtaining Medical Evidence" to California's Department of Disability Services.  (AR 82.)  The form asked that the DDS request from Dr. Johanek:  (1) copies of "all records" pertaining to plaintiff; and (2) an explanation for his belief that plaintiff was disabled "when brief treatment notes in his

/ / /

file indicate otherwise." (*Id.*)  The record does not indicate whether the DSS sent a request for more information to Dr. Johanek.  (*See* AR 98-149.)

In his decision, the ALJ asserted:

> In response to the Appeals Council order, I requested that
> the State Agency obtain a copy of all of Dr. Johanek's
> records as well as an explanation by the doctor of why he
> believed [plaintiff] was disabled when the doctor's brief
> treatment notes indicated otherwise. . . .  Neither I nor the
> State Agency received any direct response to the latter
> request [*i.e.*, the request for an explanation], but a clinical
> note, dated May 4, 2006, indicated the doctor told [plaintiff]
> his agency did not do disability assessments except for its
> agents when the latter needed to know what was to be done
> with a parolee.

(AR 15.)

Plaintiff contends that, in requesting that the DDS seek letters from Dr. Johanek, the ALJ failed to comply with the remand order.  Plaintiff argues that the ALJ should have, *inter alia*, attempted to reach Dr. Johanek by telephone, facsimile, e-mail, and/or letter; submitted questions; subpoenaed additional records; continued the hearing; or kept the record open after the hearing to allow supplementation of the record.  (JS 3-6, 10-11.)  The Court finds that remand is not warranted.

When the Appeals Council remands a case to an ALJ, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."  20 C.F.R. § 416.1477(b).  And, as plaintiff contends (JS 4-6), the ALJ has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) (citing

1   *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  However, "[t]he ALJ may

2   discharge [the duty to develop the record] in several ways, including:  subpoenaing the

3   claimant's physicians, submitting questions to the claimant's physicians, continuing

4   the hearing, or keeping the record open after the hearing to allow supplementation of

5   the record."  *Tonapetyan*, 242 F.3d at 1150; *see also Smolen v. Chater*, 80 F.3d 1273,

6   1288 (9th Cir. 1996); *see also* 20 C.F.R. § 416.912(e).  Alternatively, the ALJ may

7   request that the claimant undergo a consultative examination.  20 C.F.R. § 416.912(e).

8          Here, plaintiff mischaracterizes the record in asserting that the only attempt to

9   develop the record was the ALJ's request for DDS assistance in obtaining records.

10  First, as the ALJ indicated, the Social Security Administration ("SSA") obtained

11  further psychiatric records from Dr. Johanek, but failed to get an explanation for his

12  disability opinion.  To wit, the record indicates that on April 13, 2006, a therapist in

13  Dr. Johanek's office (*i.e.*, the California Department of Corrections Parole Outpatient

14  Clinic (the "POC")) mailed copies of plaintiff's psychiatric records to the SSA.[2]  (AR

15  505; *see* AR 147-48.)  On April 17, 2006, an SSA caseworker informed Dr. Johanek

16  that the SSA had received copies of medical records, but the SSA desired Dr. Johanek

17  to explain why he felt plaintiff was disabled, "when brief treatment notes indicate[d]

18  otherwise."  (AR 148.)  On May 26, 2006, an employee of Dr. Johanek's office told

19  the caseworker that doctors in Dr. Johanek's office did not complete disability forms

20  or indicate that patients were disabled, as doing so would affect the patients' behavior

21  and treatment.  (AR 147-48.)  On June 22, 2006, the case worker left Dr. Johanek a

22  voicemail message requesting an explanation for his disability opinion, but received

23  no response.  (AR 147.)

24

25

26  ————————————

27         [2] In response to a request from a Social Security Administration caseworker, the
    therapist faxed the records to the Administration on May 30, 2006 as well.  (AR 505; *see*
28  AR 147-48.)

In turn, a May 4, 2006 treatment note from Dr. Johanek states, "[Plaintiff] states that the disability judge wants a letter from me further explaining his disability. He has been informed as has his mother, that we do no [*sic*] do disability evaluations, we do evaluations for parole, so that the agent can determine what needs to be done with the individual. He has multiple medical problems that POC does not deal with at all." (AR 506.) In addition, a POC case note indicates that the POC released plaintiff's psychiatric records to plaintiff's attorney on January 4, 2006. (AR 505.)

Second, the ALJ requested that plaintiff undergo a consultative examination, which plaintiff underwent on February 1, 2006. (AR 71, 476-84.) Third, the ALJ left the record open after the hearing in order for plaintiff's attorney to submit updated records from Dr. Johanek's office. (AR 579.)

In light of the foregoing, the Court cannot conclude that the ALJ failed to comply with the remand order or with his independent duty to develop the record. The record indicates that the SSA contacted the POC by several different means of communication and managed to obtain additional records from Dr. Johanek; but the POC could not, despite several attempts, obtain a explanation of the disability opinion, because Dr. Johanek refused to provide one. The record further indicates that the ALJ secured a consultative examination – a means of developing the record set forth in the Social Security regulations and suggested by the Appeals Council. The ALJ also kept the record open for plaintiff's counsel to submit additional records – also a means of developing the record set forth in the regulations.

The Court notes here that under the regulations, an ALJ is not obligated to seek additional evidence or clarification from a medical source when the ALJ "know[s] from past experience that the source either cannot or will not provide the necessary findings." 20 C.F.R. § 416.912(e)(2). In light of that regulatory provision and Dr. Johanek's assertion that he did not do disability evaluations, and in light of the other attempts to develop the record, the Court is not inclined to find that the ALJ erred in

/ / /

1  failing to obtain a further explanation for Dr. Johanek's opinion.  Remand on this

2  issue is therefore not warranted.

3  2.      The treating psychiatrist's opinion.

4          In his July 4, 2004 opinion, Dr. Johanek asserted:

5                  MICHAEL WALKER HAS BEEN FOLLOWED BY ME

6                  AS A PSYCHIATRIC PATIENT SINCE 4 DEC 03.

7                   THE SUBJECT HAS A PSYCHOTIC DISORDER

8                  RELATING TO HEAD TRAUMA, AND IS CONSIDERED

9                  DISABLED.

10

11                 HIS CURRENT GLOBAL ASSESSMENT OF

12                 FUNCTIONING (GAF) IS 50[.]

13  (AR 459.)

14          As discussed above, in the prior decision, the ALJ found that Dr. Johanek's

15  progress notes did not support this opinion.  In the remand order, the Appeals Council

16  ordered the ALJ to "[g]ive further consideration to the treating source opinion . . . and

17  explain the weight given to such opinion evidence."  (AR 68.)

18          In the decision at issue herein, the ALJ discounted Dr. Johanek's opinion,

19  reasoning:

20                 As for the disputed statement of Dr[.] Johanek, I note again

21                 the doctor's reluctance to provide more detailed information

22                 regarding that assessment and the persistent failure of the

23                 doctor's clinical notes to reflect any change in [plaintiff's]

24                 mental status since being released from prison.  I noted also

25                 that the doctor assessed a Global Assessment of Functioning

26                 (GAF) scores [*sic*] of 60 in March 2003 and a score of 50 in

27                 October 2003 without noting any change in [plaintiff's]

28                 condition in the clinical notes.  Ex.17F at 12 and 14.  While

1    in prison, the treating source indicated GAF scores ranging
2    from 55 to 65 as noted above.  I also noted that in a clinical
3    note dated January 8, 2004, Dr. Johanek indicated that
4    [plaintiff] should talk to a counselor about job opportunities
5    in the area when he reported he was having problems with
6    financial support.  Ex. 17F at 9.  It is clear then that Dr.
7    Johanek's noted expression of disability was at best only an
8    accommodative statement provided [to] [plaintiff] at the
9    request of [plaintiff] and his representative and that Dr.
10   Johanek's opinion regarding [plaintiff'] level of functioning
11   was not dissimilar from the earlier treating sources who
12   indicated only mild to moderate limitations, which the
13   psychological expert at the hearing on remand found better
14   supported by the evidence of record.

15   (AR 17.)

16           Plaintiff contends that the ALJ gave legally insufficient reasons for discounting

17   Dr. Johanek's opinion.  The Court disagrees.  In evaluating physicians' opinions, the

18   case law and regulations distinguish among three types of physicians:  (1) those who

19   treat the claimant (treating physicians); (2) those who examine but do not treat the

20   claimant (examining physicians); and (3) those who neither treat nor examine the

21   claimant (non-examining physicians).  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

22   1995), *limited on other grounds*, *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996);

23   *see also* 20 C.F.R. §§ 416.902, 416.927(d).  As a general rule, more weight should be

24   given to the opinion of a treating source than to the opinions of physicians who do not

25   treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *see also* 20

26   C.F.R. § 416.927(d)(2).

27   / / /

28   / / /

If a treating physician's opinion on the issue of disability is controverted, the ALJ must provide "specific and legitimate" reasons, supported by substantial evidence in the record, in order to reject the treating physician's opinion. *Lester*, 81 F.3d at 830; *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001). "The ALJ could meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks omitted).

Here, Dr. Johanek's opinion was contradicted by, *inter alia*, the opinion of William Stoltz, Ph.D., the psychologist who testified at the hearing. Dr. Stoltz opined, in pertinent part, that plaintiff was limited to three- or four-step instructions; could not engage in intensive interpersonal interactions; and could not work in a high security environment. (AR 615.) The ALJ was thus required to provide specific, legitimate reasons for giving weight to Dr. Stoltz's opinion. (*See* AR 16.) The Court finds that he did so.

First, an ALJ is not required to give weight to the opinions of physicians on issues reserved to the Social Security Administration, such as statements by a medical source that a claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(e)(1), (e)(3). Thus, Dr. Johanek's opinion that plaintiff could not work was not entitled to special weight. Although the Appeals Council indicated that this reason was insufficient, in itself, to discount Dr. Johanek's opinion, the Court finds that it constitutes one of several specific, legitimate reasons for so doing.

Second, an ALJ may discount a treating physician's opinion where it is inconsistent with his or her notes and with the notes of other physicians. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ provided specific and legitimate reasons for rejecting treating doctor's opinion, as opinion was inconsistent with doctor's examination notes as well as internally inconsistent and not supported by any findings made by treating doctor or any other doctor); *Saelee*, 94 F.3d at 522 (ALJ

properly disregarded treating doctor's report where it varied from his treatment notes); *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (treating doctor's conclusory opinion that claimant was disabled was properly rejected by ALJ when it was internally inconsistent and not consistent with doctor's prior medical reports).  Here, as the ALJ asserted, plaintiff's records from his period of incarceration indicate that his GAF score fluctuated between 55 and 65.  (AR 170, 189, 192, 197, 226, 232, 240, 281.)  In addition, plaintiff's prison treating sources, to the extent they gave any detail about plaintiff's mental status, noted mainly "mild" or "moderate" limitations, stressors, and symptoms.  (*See*, *e.g.*, AR 170 (noting "moderate" stressors), 189 (same), 192 (same), 197 (noting, *inter alia*, nervous and anxious mood, but affect within normal limits and fair insight and judgment), 226 (noting, *inter alia*, depressed and anxious mood, but fair insight and judgment and normal sleep, appetite); *but see* 232 (noting, *inter alia*, suicidal ideation relating to depression, but assigning GAF score of 65)).

As the ALJ also noted, on March 1, 2003, a few months prior to plaintiff's onset date, a California Department of Corrections and Rehabilitation social worker assigned plaintiff a Global Assessment of Functioning ("GAF") score of 60.[3]  (AR

---

[3]   The Diagnostic and Statistical Manual of Mental Disorders organizes each psychiatric diagnosis into five levels relating to different aspects of the disorder or disability.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27-33 (4th ed., text rev., 2000) (the "DSM-IV-TR").  Axis V is the GAF, or, for persons under the age of 18, the Children's Global Assessment Scale.  The GAF reports the clinician's judgment of the individual's overall functioning.  *Id.* at 32-33.  A GAF score of 41-50 indicates that the patient has "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)."  DSM-IV-TR at 34.

A GAF score of 51-60 indicates that the patient has "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *Id.*  A GAF of 61-70 denotes "[s]ome mild symptoms (e.g., depressed mood
(continued...)

515.)  On October 27, 2003, after plaintiff's release from prison and onset date, a POC social worker assigned plaintiff a current GAF score of 50.[4]  (AR 517.)  However, the POC treating notes from that period give very little detail as to plaintiff's symptoms and functioning.  Nor do they indicate that plaintiff's symptoms had worsened or that his functioning had deteriorated in the months following the March 2003 treatment note.  (*See* AR 460, 463-69, 512-17.)  Nor do the treatment notes *circa* July 2004, when Dr. Johanek opined that plaintiff could not work, include any details suggesting that plaintiff's functioning had markedly worsened after his prison release.  (*See* AR 460-62.)  In light of the pre- and post-release treatment notes, it was not unreasonable for the ALJ to conclude that the record did not support a claim that plaintiff's condition had deteriorated such that by July of 2004, he was unable to work.

In addition, as the ALJ indicated, Dr. Johanek reported in a January 8, 2004 treating note that plaintiff mentioned that he was turned down for Supplemental Security Income benefits and was concerned that he would not have a place to live after the next few days.  (AR 512.)  Dr. Johanek suggested that plaintiff discuss "job options in the area" with a POC social worker.  (*Id.*)  As the ALJ reasoned, Dr. Johanek's suggestion that plaintiff look into "job options" is inconsistent with his assertion, only a few months later, that plaintiff could not work.  The foregoing inconsistency was another specific, legitimate reason, supported by substantial record evidence, for giving less weight to Dr. Johanek's opinion.

---

[3](...continued)
and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships)." *Id.*

[4]  The record indicates that plaintiff was discharged from custody on or about October 20, 2003.  (*See* AR 460, 516.)  Plaintiff alleges that his disability began on October 21, 2003.  (AR 544.)

An ALJ may also give less weight to an opinion that is lacking in detail.  As the ALJ indicated, Dr. Johanek did not give detailed information as to why he believed plaintiff was disabled, but merely stated, in one sentence, that plaintiff could not work due to a psychotic disorder resulting from head trauma.  The brevity of Dr. Johanek's opinion was a specific, legitimate reason, supported by substantial evidence, for discounting it.  *Cf.* 20 C.F.R. § 416.927(d)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion").

Plaintiff argues that the ALJ's conclusion that Dr. Johanek's opinion was an "only an accommodative statement" (AR 17) was "unsupported" and a "highly speculative assumption." (JS 12.)  The Court disagrees.  Dr. Johanek's treatment notes from early 2004 reflect several requests by plaintiff for information that his lawyer could use to support plaintiff's SSI claim.  (*See* AR 461-62.)  That, in itself, would not necessarily undermine Dr. Johanek's opinion; but the fact that Dr. Johanek recommended in March of 2004 that plaintiff look for work, then opined in July of 2004 that plaintiff could not work, suggests that the July 2004 opinion did not accurately reflect his view of plaintiff's limitations.  Although the evidence could be interpreted more favorably to plaintiff, the ALJ's conclusion that Dr. Johanek's opinion was "accommodative" was reasonable, and the Court must thus uphold it. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

In sum, the ALJ provided specific, legitimate reasons, supported by substantial evidence, for rejecting Dr. Johanek's opinion.  Remand on this issue is therefore not warranted.

3.    Plaintiff's obesity.

In a Disability Report - Adult form dated November 3, 2003, plaintiff reported that he was 6' and weighed 330 pounds.  (AR 98.)  In his decision, the ALJ found that plaintiff had (*inter alia*) the severe impairment of marked (level III) obesity with controlled hypertension and history of chronic lumbar spine strain-sprain.  (AR 15.) The ALJ assessed the severity of plaintiff's obesity as follows:

> As noted at pages 2 and 3 of the prior hearing decision, the
> evidence at record at the time of the prior decision
> documented . . . a history of obesity and hypertension.
>
> The evidence of remand shows that [plaintiff] is still quite
> obese with a body mass index in excess of 40, but his blood
> pressure is controlled medically with no indication of any
> symptoms, medication side-effects, or hypertensive end
> organ disease.  Ex. 18F.

(*Id.*)  The ALJ found that plaintiff's combination of impairments resulted in "more than slight limitation of [plaintiff's] ability to perform basic work related activities even though it is quite apparent that his hypertension and seizure disorder have been nonsevere in and of themselves."  (AR 15-16.)

Next, in determining whether plaintiff had an impairment or combination of impairments that met or medically equalled one of the listed disorders in the Listing of Impairments, the ALJ asserted:

> As noted, [plaintiff] may be limited more than slightly by his
> obesity and combination of other medically determinable
> impairments, but his combination of physical impairments
> have not been of marked or extreme severity or a significant
> factor in his overall functioning.

(AR 16.)

Then, in discussing plaintiff's residual functional capacity ("RFC"), the ALJ asserted, "I . . . credit [plaintiff's] admission that he does not consider his obesity to be a serious medical problem . . . ."  (*Id.*)  Ultimately, the ALJ found that plaintiff had the RFC to, in pertinent part, lift, carry, push, or pull 20 pounds occasionally and ten pounds frequently; stand or walk frequently with customary breaks; sit constantly with customary breaks; and climb, stoop, crouch, kneel, and crawl occasionally.  (*Id.*)

Plaintiff contends that the ALJ failed to properly consider plaintiff's obesity in the decision. (JS 16-18, 21.)  The Court disagrees.  Social Security Ruling ("S.S.R.") 02-1p provides that although obesity is no longer a listed impairment,[5] it is still considered a medically-determinable impairment, and its effect on a claimant's musculoskeletal, respiratory, and cardiovascular systems must be considered when evaluating disability.  S.S.R. 02-1p, 2000 WL 628049 (S.S.A.) at *1.  Generally, a claimant will be considered "obese" when he or she has a body mass index ("BMI")[6] of 30.0 or above, although BMI is not always dispositive of whether a claimant has excess body fat.  *Id.* at *2.  When establishing the existence of obesity, the SSA "will generally rely on the judgment of a physician who has examined the claimant and reported on his or her appearance and build, as well as weight and height."  Thus, in the absence of evidence to the contrary, the SSA will accept a diagnosis of obesity given by a treating source or by a consultative examiner.  *Id.* at *3.

S.S.R. 02-1p further provides that the SSA will consider obesity in determining whether:  (1) the individual has a medically determinable impairment or impairments; (2) the individual's impairment or impairments are severe; (3) the individual's impairment or impairments meet or equal the requirements of a listed impairment in the Listings; and (4) the individual's impairment or impairments prevent him or her from doing past relevant work and other work that exists in significant numbers in the

---

[5]   At step three of the sequential evaluation process, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  20 C.F.R. §§ 416.920(d), 416.1525, 416.926; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), the claimant is disabled.

[6]   BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m$^2$).  S.S.R. 02-1p, 2000 WL 628049 (S.S.A.) at *2 (citing *Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults* (National Institute of Health Publication No. 98-4083, September 1998)).

national economy. *Id.* at *3. In addition, the ALJ "must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" in light of the individual's obesity. S.S.R. 02-1p, 2000 WL 628049 (S.S.A.) at *6.

Here, contrary to plaintiff's assertions, the ALJ did consider plaintiff's obesity as required by S.S.R. 02-1p. First, as noted above, the ALJ found that plaintiff had the medically determinable impairment of obesity, and that plaintiff's obesity was severe. (AR 15.) Second, the ALJ considered whether plaintiff met or medically equalled a Listing due to his obesity (AR 16), and his conclusion that plaintiff's obesity in combination with plaintiff's other impairments was not extremely severe and did not significantly affect plaintiff's functioning was supported by substantial evidence. Plaintiff's post-onset treating records include, in pertinent part, references to hypertension or high blood pressure (*see* AR 333, 541, 542), but, as the ALJ noted (AR 15), the records do not include complaints of low back pain. Nor, the Court notes, do they include other indicia of obesity-related complaints. (*See* AR 332-33, 538-43.)

Nor, as the ALJ noted, do the post-onset treating records mention hypertension symptoms, medication side effects, or end-organ damage. (*See id.*) In addition, as the ALJ noted (AR 15), plaintiff testified at the hearing that he didn't believe that his weight limited him at all. (AR 620.) The ALJ's conclusion that plaintiff did not meet a Listing was thus a reasonable interpretation of the evidence, and the Court must thus uphold it. For the same reasons, the ALJ's assessment of plaintiff's RFC was supported by substantial evidence, with respect to the ALJ's determination that plaintiff's obesity did not severely affect his functioning. (*See* AR 16.)

As S.S.R. 02-1p provides, obesity can cause, and complicate, chronic diseases such as type II diabetes, hypertension, osteoarthritis, and sleep apnea. S.S.R. 02-1p, 2000 WL 628049 (S.S.A.) at *3; *see also* National Institute of Health, *Do You Know the Health Risks of Being Overweight?*, http://win.niddk.nih.gov/publications/

health_risks.htm#heart disease (September 25, 2009) (same).  In addition, persons with obesity may have difficulty sustaining a function over time, and a person with obesity and arthritis affecting a weight bearing joint "may have more pain and limitation than might be expected from the arthritis alone."  S.S.R. 02-1p, 2000 WL 628049 (S.S.A.) at *6.  Obesity may also contribute to mental impairments such as depression and, in the case of obesity-related sleep apnea, cause a loss of mental clarity and slowed reactions.  *Id.* at *3.

However, the treating records do not indicate that plaintiff's obesity caused type II diabetes, osteoarthritis, or sleep apnea, or even that plaintiff suffered from those impairments.  Nor do they indicate that plaintiff suffered pain in weight-bearing joints due to his obesity or that obesity complicated plaintiff's mental impairments and hypertension.  Nor do they contain any indication that, due to his weight, plaintiff would have difficulty sustaining function over time beyond the limitations set forth in the RFC the ALJ assigned.  (*See* AR 332-33, 538-43; *see also* AR 157-300, 328-95, 407-09.)

In fact, in arguing for remand on this issue, plaintiff points to no specific record evidence other than plaintiff's height and weight.  (*See* JS 16-18, 21.)  But as discussed above, the ALJ took into account plaintiff's height and weight, as well as other obesity-related factors, in determining whether plaintiff was disabled.  Although the mere fact of plaintiff's high BMI might arguably be interpreted to cause greater limitations than those the ALJ found, his interpretation of the medical evidence and plaintiff's testimony was reasonable, and the Court must thus uphold it.  *Batson*, 359 F.3d at 1193.  Remand on this issue is therefore not warranted.

4.     The lay witness testimony.

In a Function Report - Adult Third Party dated December 2, 2003, Billie M. Powell, who identified herself as plaintiff's mother, reported that plaintiff sometimes needed to be reminded to do things; sometimes needed a reminder to shave or get a haircut; needed a lot of encouragement; seemed to be very depressed and frustrated;

1  and had to have instructions repeated.  Powell also reported that plaintiff's conditions

2  affected his ability to understand, follow instructions, complete tasks, and concentrate.

3  (AR 127.)

4       The ALJ did not discuss Powell's report in his decision, and plaintiff contends

5  that this was reversible error.  (*See* AR 13-18; JS 21-22, 23.)  The Court disagrees.

6  The Social Security regulations provide that the ALJ "may . . . use evidence from

7  other sources to show the severity of [an individual's] impairment(s) and how it

8  affects [her] ability to work."  20 C.F.R. § 416.913(d).  In turn, the Ninth Circuit has

9  repeatedly held that "[d]escriptions by friends and family members in a position to

10 observe a claimant's symptoms and daily activities have routinely been treated as

11 competent evidence."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987);

12 *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993) (ALJ must consider lay testimony

13 concerning a claimant's ability to work); *Stout v. Commissioner, Soc. Sec. Admin.*, 454

14 F.3d 1050, 1053 (9th Cir. 2006) (same).  This applies equally to sworn hearing

15 testimony of witnesses (*see Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)) as

16 well as to unsworn statements and letters of friends and relatives (*see Schneider v.

17 Commissioner of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).

18      As a general rule, if the ALJ chooses to reject such evidence from other sources,

19 he may not do so without comment (*Nguyen*, 100 F.3d at 1467) and he must provide

20 "reasons that are germane to each witness" (*Dodrill*, 12 F.3d at 919; *see also Smolen*,

21 80 F.3d at 1289 (dismissing witness testimony simply because witness is family

22 member not sufficiently germane to witness)).  However, if the reviewing court can

23 "confidently conclude that no reasonable ALJ, when fully crediting the testimony,

24 could have reached a different disability determination," the reviewing court may find

25 the error harmless.  *Stout*, 454 F.3d at 1056.

26      Here, the ALJ "readily credit[ed] [plaintiff's] testimony and statements

27 regarding his inability to handle multiple tasks and instructions simultaneously . . . ."

28 (AR 16.)  The ALJ found that mentally, plaintiff had the RFC to "perform simple

repetitive tasks and three to four step instructions in a habituated setting requiring no significant safety operations or hypervigilance." (*Id.*)  These limitations are entirely consistent with Ms. Powell's testimony as to plaintiff's symptoms.  The Court thus finds that no reasonable ALJ would have reached a different disability determination had he or she credited Ms. Powell.  Any error in failing to consider Ms. Powell's testimony was therefore harmless.

Accordingly, remand on this issue is not warranted.

5.   <u>Developing the record</u>.

Plaintiff has a bullet lodged in the left side of his brain.  (*See* AR 219, 267, 301-02.)  In a Disability Report - Adult dated November 3, 2003, plaintiff reported that after he was shot, he could "no longer read or spell." (AR 98.)  Plaintiff testified at the hearing that his reading had improved since approximately 2001, and that he could read "little paperback[s]" (AR 623), but he still wrote things backwards and his spelling had deteriorated since his head injury (AR 624).

In his decision, the ALJ asserted:

> [Plaintiff] continued to maintain at the hearing on remand
> that he had a problem reading following the gunshot wound
> to his head, but said he had no such problem now although
> he sometimes wrote things backwards.  I have noted that his
> treating sources have noted such complaints at times, but the
> allegations have not been consistent, especially in prison,
> and the psychological testing while in prison found no signs
> of any organic brain disorder.  Ex. 2F at 9, 13, 19, 28, 38,
> and 84.  Given the evidence of poor motivation and
> cooperation with testing, as noted in the prior decision, and
> the inconsistency of the complaints, I cannot credit the
> complaints beyond the range of the limits found herein
> above.

(AR 16-17.)

Plaintiff contends that the ALJ should have developed the record as to plaintiff's ability to read, write, and spell. (JS 24-26, 27.) The Court disagrees. Plaintiff is correct in asserting (JS 24-25) that the ALJ has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented. *Tonapetyan*, 242 F.3d at 1150; *Crane*, 76 F.3d at 255. However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan*, 242 F.3d at 1150). Here, the evidence was not ambiguous, because the ALJ properly discounted plaintiff's credibility as to his ability to read and write.

Once a claimant produces medical evidence of an underlying impairment that is reasonably likely to cause the alleged symptoms, medical findings are not required to support their alleged severity. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain . . . , a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain") (internal citation omitted); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying *Bunnell* to subjective physical complaints). However, an ALJ may reject a claimant's allegations upon: (1) finding evidence of malingering; or (2) providing clear and convincing reasons for so doing. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

/ / /

/ / /

/ / /

/ / /

/ / /

Here, the ALJ reasonably determined that there was evidence of malingering. As the ALJ noted, and as ALJ Baum discussed at some length in the June 2005 hearing decision (AR 32, 33),[7] in a November 18, 2003 psychological consultative examination, Clifford Taylor, Ph.D., found that plaintiff was "minimally cooperative and gave minimal effort" (AR 410).  Dr. Taylor further found that plaintiff's results on the Rey 15-Item Memory Test - II[8] were "consistent with 'faking-bad' cognitive impairment."  (AR 415.)  Dr. Taylor opined that plaintiff "was not a credible participant in the testing portion of the [consulting] examination . . . ," as confirmed by the Rey 15-Item Memory Test - II.  (AR 416.)  This evidence of malingering was sufficient to discount plaintiff's credibility as to his mental impairments, and thus was sufficient to find plaintiff less than credible in his claim that he could no longer read or spell and had difficulty writing.  *See Benton*, 331 F.3d at 1040.

Even if plaintiff's performance on the Rey 15-Item Memory Test - II were insufficient evidence of malingering, the Court would still uphold the ALJ's credibility finding.  In the absence of evidence of malingering, an ALJ may consider the following factors in weighing a claimant's credibility:  (1) his reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Thomas v. Barnhart*, 278 F.3d 947,

---

[7]   The Court notes that even though the Appeals Council vacated the June 2005 hearing decision, it was not improper for the ALJ to incorporate by reference that decision's discussion of plaintiff's credibility.  *Mason v. Astrue*, 2008 WL 4382662 at *2 (C.D. Cal. 2008).

[8]   According to Dr. Taylor, the Rey 15-Item Memory Test - II is a technique for evaluating a patient's cooperation and is used to test the validity of a memory complaint. A person who is not impaired can typically recall at least three of five-character sets, or nine items.  (AR 415.)  Recall of fewer than eight items suggests malingering.  Plaintiff recalled three items.  (*Id.*)

958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 416.929(c); S.S.R. 96-7p, 1996 WL 374186 (S.S.A.).  The ALJ may also use "ordinary techniques of credibility evaluation." *Thomas*, 278 F.3d at 960.  "General findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (1998).  The ALJ must state which testimony is not credible and identify the evidence that undermines the plaintiff's complaints. *Id.*; *Benton*, 331 F.3d at 1041.  The ALJ's credibility determination is entitled to deference if his reasoning is supported by substantial evidence in the record and is "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . . ." *Bunnell*, 947 F.2d at 345 (internal quotation marks omitted); *see also Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009) (ALJ must "point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims").

Here, as the ALJ asserted, plaintiff did not report problems with reading, writing, or spelling while in prison.  Furthermore, although plaintiff occasionally reported symptoms such as depression, insomnia, or auditory hallucinations, plaintiff often denied symptoms of mental disorder or reported only minimal symptoms, particularly towards the end of his prison stay.  (*See* AR 161, 165-171, 175, 184-194, 197, 200-05, 213, 222-32, 235-36, 237-40, 279-81, 283, 287, 291, 298.)  On December 23, 2002, for example, plaintiff reported "minimal symptoms/signs of mental disorder, in the form of occasional depressed mood . . . " (AR 175); and by March 17, 2003 and June 2, 2003, plaintiff reported "no symptoms/signs of mental disorder" (AR 165, 168).

Plaintiff did report to Dr. Johanek on October 27, 2003 that he had difficulty spelling, reading, and writing.  (AR 516.)  However, Dr. Johanek's treatment notes do not include any other reports of such difficulties.  (*See* AR 459-75, 487-536.)  In determining credibility, an ALJ may consider conflicts between the claimant's statements and the rest of the evidence.  20 C.F.R. § 416.929(c)(4).  The relativity

scarcity of complaints by plaintiff of difficulties in reading, writing, and spelling was a clear and convincing reason, supported by substantial evidence, for finding him incredible.

Remand on this issue is therefore not warranted.

## CONCLUSION

For the foregoing reasons, the judgement of the Commissioner is affirmed.

IT IS SO ORDERED.

DATED: June 4, 2010

/S/ FREDERICK F. MUMM
FREDERICK F. MUMM
United States Magistrate Judge